UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

UNITED STATES OF AMERICA

   - against -

ANTHONY MADERA,

               Defendant.

-----------------------------------X

13 Cr. 415 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

12 4 13

      On August 15, 2013, Anthony Madera ("Madera" or "Defendant"), pleaded guilty to knowingly and with intent to defraud issuing credit cards in the names of other people, to receive payment and any other things of value during a one-year period, the aggregate value of which is equal to or greater than $1,000.

      For the reasons set forth below, Madera will be sentenced to five months imprisonment followed by three years of supervised release, with five months of home detention to be served during the ordered term of supervised released.

1

Prior Proceedings

Madera was named in a One-Count Indictment filed in the Southern District of New York on June 3, 2013. Count One charges that from at least July 2012, up to about September 2012, in the Southern District of New York and elsewhere, Madera knowingly and with intent to defraud issued credit cards in the names of other people, to receive payment and any other things of value during a one-year period, the aggregate value of which is equal to or greater than $1,000. On August 15, 2013, Madera appeared before the Honorable Ronald Ellis in the Southern District of New York and allocated to his criminal conduct in the above charge. Madera's sentencing is currently scheduled for December 9, 2013.

The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the

sentence to be imposed here is the result of a consideration of:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed —

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for —

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

    (5)    any pertinent policy statement . . . [issued by the Sentencing Commission];

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether
that sentence is a so-called Guidelines sentence or not. See
Crosby, 397 F.3d at 114-15.


The Defendant


        The Court adopts the facts set forth in the
Presentence Investigation Report ("PSR") with respect to
Madera's personal and family history.


The Offense Conduct


        The following description draws from the PSR. The
specific facts of the underlying conduct are adopted as set
forth in that document.


        On or about July 4, 2012, an individual, later
identified as Madera, used Capital One's website to apply for a
credit card with identifying information relating to an
individual ("Victim-1"), who was not Madera.   The applicant
altered two letters in Victim-1's first name, and requested that
the credit card be mailed to an address in the Bronx, New York
(the "Bronx Address").   In July 2012, Capital One issued a

                              4

credit card ("Credit Card-I") bearing the version of Victim-1's name that was used in the application and mailed Credit Card-l to the Bronx Address.

An individual with access to the account associated with Credit Card-1 provided Capital One with a telephone number with a 212 area code ("Phone Number-1"), a telephone number with a 347 area code ("Phone Number-2"), and a Yahoo.com email address that included the text "ANT" ("Email Address- 1"). On about July 9, 2012, an individual used Phone Number-2 to call Capital One to activate Credit Card-1. On July 22, 2012, Credit Card-1 was used to make a purchase in the amount of approximately $227.55 at a store in the Bronx, New York ("Store-1"). On July 25, 2012, at approximately 6:52 p.m., an individual used Credit Card-1 to withdraw $400 from an ATM machine in Manhattan, New York (the "Manhattan ATM").

On about July 27, 2012, an individual used Capital One's website to add an "authorized user" named "Mr. Anthony J. Madera" to the account associated with Credit Card-1. The individual who made this change to the account provided the date of birth and social security number of Madera.

On July 30, 2012, an individual called Capital One and changed one of the telephone numbers associated with Credit Card-1 from Phone Number-2 to a new telephone number with a 347 area code ("Phone Number-3"). Between July 2012, and about August 2012, Credit Card-1 was used to make at least $13,555 in charges.

An agent of the Postal Inspection Service interviewed Victim-1, who stated that in June 2012, the superintendent of Victim-1's apartment building sent an individual that Victim-1 later identified, based on a photograph, as Madera, to paint her apartment.   Victim-1 has never lived or received mail at the Bronx Address, and did not authorize Madera or anyone else to apply for (or use) a credit card in Victim-1's name.  Victim-1 gave Madera and another individual access to the apartment so that they could complete the painting while Victim-1 was at work.   During the time that Madera painted the apartment, there were documents in the apartment that included identifying information relating to Victim-1.     Madera was shown on a surveillance video from Store-1 that was recorded on July 22, 2012 when Credit Card-1 was used.

Documents from Capital One also indicated that on

6

about July 22, 2012, an individual used Capital One's website to apply for a credit card with identifying information relating to an individual ("Victim-2") who was not Madera.  The applicant requested that the card be mailed to the Bronx Address. In July 2012, Capital One issued a credit card ("Credit Card-2") in Victim-2's name and mailed it to the Bronx Address.

An individual with access to the account associated with Credit Card-2 provided Capital One with Phone Number-2 and a Yahoo.com email address similar to that of Email Address-1 (also including the text "ANT").  On or about August 13, 2012, an individual used Phone Number-1 to call Capital One to activate Credit Card-2. On August 16, 2012, Credit Card-2 was used to make a purchase in the amount of approximately $367.95 at a store in the Bronx, New York ("Store-2").  In August of 2012, Credit Card-2 was used to make at least $1,223 in charges.

Victim-2 informed Capital One that the charges were not authorized. The case agent obtained surveillance from Store-2 that was recorded on August 16, 2012 and showed Madera engaging in a transaction.

In total, Capital One documents reflected that between

7

August 2012 and September 2012, Capital One received 11 additional applications for credit cards, via its website, in which the applicant provided Phone Number-1 or Phone Number-3. In 10 of the 11 credit card applications, the applicant also listed the Bronx Address. In each of the 11 credit card applications, the applicant provided a valid date of birth or social security number corresponding to the name in which the applicant sought to have the card issued. None of the 11 credit card applications were made in the name of "Anthony Madera." Capital One denied all of the 11 credit card applications.

Based on the case agent's review of law enforcement databases, it was learned that Phone Number-1, Phone Number-2, and Phone Number-3 were all at one time associated with an individual named "Anthony Madera."

Madera's criminal history is as follows:

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline |
| --- | --- | --- | --- |

| 3/25/97<br>Age: 21 | Attempted Criminal Sale of a Controlled Substance in the 3rd Degree/Bronx County Supreme Court | 6/10/97: Sentence – 5 years' Probation | 4A1.2(e)(2) |
|---|---|---|---|
| 4/30/03<br>Age: 27 | Cts. 1 and 2: Criminal Possession of a Controlled Substance in the 7th Degree/Bronx County Criminal Court | 5/6/03: Sentence – Time Served | 4A1.1(c) |
| 4/18/06<br>Age: 30 | Criminal Possession of a Controlled Substance in the 5th Degree /Bronx County Supreme Court | 5/18/07: Sentence – 42 months custody, Post Release Supervision 2 years' Probation | 4A1.1(a) |
| 1/9/07<br>Age: 31 | Criminal Possession of a Controlled Substance in the 7th Degree/Bronx County Criminal Court | 1/10/07: Sentence – 3 days custody | 4A1.1(c) |
| 8/3/10<br>Age: 34 | Criminal Possession of a Controlled Substance in the 7th Degree/Bronx County Supreme Court | 5/15/12 Sentence – Conditional Discharge | 4A1.1(c) |

In addition, Madera completed a financial statement form wherein he reported that he has no assets and the following

9

liabilities: (1) Educational loan for $17,000; (2) Credit Cards payments for $1,800; and (3) snap-on tools for $1,800.   An Equifax credit inquiry reflects that Madera has debts of $251 from a student loan.   At the time of the presentence interview, Madera had only recently started temporary employment and could not offer a projected monthly income.   Madera advised that his girlfriend earned a monthly net income of approximately $900 and that his total monthly expenses amounted to approximately $1,030.

The Relevant Statutory Provisions

        The maximum term of imprisonment on Count One is fifteen years, pursuant to 18 U.S.C. § 1029(a)(5).   The Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

        The maximum fine for Count One is $250,000 pursuant to 18 U.S.C. § 3571.   A special assessment of $100.00 is also mandatory for Count One, pursuant to 18 U.S.C. § 3013.   Subject to the Defendant's ability to pay, the Court shall consider the expected costs to the Government of any imprisonment, probation or supervised release pursuant to §5E1.2(d)(7).   The most recent

advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.71 for monthly confinement.

As a result of committing the offenses alleged in Count 1 of the Information, Madera shall forfeit to the U.S., pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and (a)(3), at least $14,778, all property real and personal, involved in the offense or traceable to such property.

**The Guidelines**

The November 1, 2012 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Pursuant to Defendant's plea allocution, Defendant's base offense level is six. U.S.S.G. §2B1.1(a)(2). Pursuant to U.S.S.G. § 2B1.1(b)(1)(C), because the offense involved a loss

11

amount of more than $10,000, but less than $30,000, the base offense level is increased by four levels. Pursuant to U.S.S.G. § 2B 1.1(b)(11)(C)(i), because the offense involved the unauthorized use of means of identification unlawfully to obtain another means of identification, the base offense level is increased by two levels. Because Madera clearly demonstrated acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(a).   Madera's total offense level is thus ten.

The criminal convictions above result in a Criminal History Category of III, and six criminal history points.

Based upon the calculations set forth above, the Defendant's stipulated Guidelines range is 10 to 16 months' imprisonment.  The minimum term of imprisonment may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment, pursuant to §5C1.1(d).   The

guideline range for a term of supervised release is at least one year but not more than three years, pursuant to §5D1.2(a)(2). The fine range for this offense is $2,000 to $20,000. USSG §5E1.2.  Because the applicable guideline range is in Zone C of the sentencing table, the Defendant is not eligible for probation.  §5B1.1.


**The Remaining Factors of 18 U.S.C. § 3553(a)**


Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.


Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant."  Pursuant to 18 U.S.C. § 3553 (2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.


13

The instant offense represents Madera's sixth conviction, the last of which occurred in 2010. He has been sentenced to custodial terms of up to 42 months. During the presentence interview, Madera related that he was greatly affected by the death of his son. Madera appears to be making improvements in his employment, drug rehabilitation and mental health efforts. Based on the above factors, a custodial term of five months imprisonment and five months home detention, to be served during the ordered term of supervised released, is appropriate.

**The Sentence**

For the instant offense, Defendant Madera will be sentenced to five months' imprisonment followed by three years of supervised release, with five months of home detention to be served during the ordered term of supervised released.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The defendant shall provide the probation officer

14

with access to any requested financial information.

(2) The defendant will participate in a program
approved by the United States Probation Office, which may
include testing to determine whether the defendant has reverted
to using drugs or alcohol.  The Court authorizes the release of
available drug treatment evaluations and reports to the
substance abuse treatment provider, as approved by the Probation
Officer.  The defendant will be required to contribute to the
costs of services rendered (co-payment), in an amount determined
by the probation officer, based on ability to pay or
availability of a third-party payment.

(3)  The defendant shall participate in a mental
health program approved by the U.S. Probation Office.  The
defendant shall continue to take any prescribed medications
unless otherwise instructed by the health care provider.  The
defendant shall contribute to the costs of services rendered not
covered by third-party payment, if the defendant has the ability
to pay.  The Court authorizes the release of available
psychological and psychiatric evaluations and reports to the
health care provider.

15

(4) The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(5)  The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

(6)  The defendant will be supervised by the district of residence.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

Madera shall forfeit $14,778 and his interest property to the United States in accordance with the Forfeiture provisions of Information 13 CR 415(RWS).

16

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 9, 2013.




It is so ordered.

New York, NY
December __4__ , 2013

ROBERT W. SWEET
U.S.D.J.

17